## Staples *v.* City Bank & Trust Co.

### *Assumpsit.*

(Decided November 11, 1915.  70 South. 115.)

1. *Husband and Wife; Surety for Husband.*—Where a wife borrows money from a creditor of the husband, and then hands it back to him in payment of the debt of the husband, she is the surety for her husband's debt, and such obligation cannot be enforced, although nominally she becomes the principal debtor on a new obligation. (Code 4497.)

2. *Same.*—Where the note was given to the bank, which was the creditor of the husband, and the wife asserted the invalidity of her note on the ground that she signed as surety for her husband, evidence of the distribution of the proceeds showing that they were used to pay the debt of the husband to the payee of the note, is admissible.

3. *Same; Jury Question.*—Under the evidence in this case it was for the jury to determine whether the wife signed the note as a surety for the husband's debt.

4. *Same.*—A note made by the wife to a bank is valid as to the remainder where only a part of the proceeds of the note could be traced as having been used to satisfy the debt of her husband, for which defendant had given the note.

5. *Appeal and Error; Harmless Error; Pleading.*—Where a defendant has the benefit of all meritorious defenses, rulings on the pleadings cannot be said to be harmful.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Assumpsit by the City Bank & Trust Company against Dora D. Staples. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The action is on a promissory note, and the defense set up is that the note was given to plaintiff bank as

a security for the debt of defendant's husband (now deceased) in violation of the statute. The note is for $2,500, and is indorsed on its back by N. A. Staples, husband of defendant. It was given in renewal of a previous note for the same sum and between the same parties. When the first note for $2,500 was given, plaintiff held a note for $2,100 signed by defendant. Plaintiff then drew its check for $2,500 in favor of defendant, and this check was returned by some one (not the defendant) with her indorsement, and a few days later her previous note to plaintiff for $2,100 was marked paid and surrendered. This $2,100 note was itself a renewal note, and the first of a series of $2,000 by which defendant first became indebted to plaintiff bank, originated in negotiations between defendant's husband and plaintiff, following which he produced and delivered the note for discount, and the amount was credited to an account then opened by plaintiff with defendant, and on the same day, January 6, 1911, her husband presented and cashed her check, payable to his order, for $2,000.

Defendant's evidence tended to show that she never had any knowledge of these transactions, and that she never received any money therefrom; but she admits that she signed such papers as her husband brought to her at home and requested her to sign, which included the several notes and checks. It appears without dispute that, when she signed the original note for $2,000, her husband was then indebted to plaintiff bank by two promissory notes aggregating $2,000; and the president of the plaintiff bank testified that at some later time (which he could not fix) some one paid off said husband's note. The trial judge excluded numerous items of evidence offered by defendant which are suffi-

ciently referred to in the opinion. The general affirmative charge was given for plaintiff, and there was verdict and judgment accordingly for $2,890. The following charge requested in writing was refused to defendant: The court charges the jury that, while the wife may borrow money on her own account and loan or give it to her husband, yet, if the money is borrowed by the wife from the husband's creditors, and it is the intention of the contracting parties at the time that this money is to be used to pay his debts, and it is, in fact, so used, such transaction was in violation of our statute, and the wife's note given for money so loaned cannot be enforced

McMILLAN & GRAYSON, for appellant.

GREGORY L. & H. T. SMITH, for appellant.

SOMERVILLE, J.—(1) This case is ruled by the principles declared by this court in the recent case of *Lawkin v. Lowell,* 176 Ala. 334, 339, 58 South. 258. In that case it was settled, upon a very full consideration of the subject, that when a wife borrows money from her husband's creditor, and hands it back to him in payment of her husband's debt, although she becomes nominally the principal debtor upon a new obligation, she is nevertheless, within the true meaning of the statute (Code, § 4497), a surety for her husband's debt, and not bound by her obligation to pay it.

A fundamental distinction is made between a loan secured from the husband's creditor and one secured from a third person who is not interested in the disposition of the fund, and who makes the loan to the wife as an independent business transaction, to do with as she pleases. If the debt sought to be enforced against the wife, or any part of it, was infected with this vice in

its inception, the infection remains, regardless of renewals or changes of form. And so, with respect to the method by which the proceeds of the loan are returned to the hands of the lender, it is of no consequence whether the payment of the husband's debt is open and direct, or whether the money passes to the creditor through intermediates chosen for the purpose.

The law looks to the intention and the result, and not to the means employed. In the present case, therefore, the mere fact that the proceeds of a nominally independent loan made by plaintiff to defendant were first deposited to the account of defendant in the plaintiff bank, and by her checked out to the husband debtor, is of no significance, if pursuant to previous understanding between plaintiff and husband, the fund was ultimately appropriated to the payment of the husband's then existing debt. The prime questions were the contemporaneous debtorship of defendant's husband (which is not disputed) and the accomplished intention of paying his debt with the obligation of defendant, his wife (which was the disputed issue). On this issue, which was necessarily a broad one, the trial judge unduly contracted the inquiries of defendant's counsel, and excluded evidence which, though purely circumstantial in character, was, we think, quite clearly relevant and admissible.

(2) It was competent for defendant to ask the witness Buck, who was president of the plaintiff bank, and who conducted the transactions in question with defendant's husband, if the check drawn by her to him did not withdraw the full amount of the $2,000 deposit made to her credit on the same day it was made. The check for $2,100 drawn by defendant in favor of her husband on November 21, 1911, was not indorsed by him, but

carried a pencil memorandum on its back, "Credit account of N. A. Staples." It was competent for defendant to ask the witness Buck in whose handwriting the memorandum was, as tending to show contingently that the money was appropriated by the bank to the debts of N. A. Staples. And, as throwing some light on the relationship and purpose of the whole series of transactions, we think the cashier's check for $2,500 drawn payable to defendant for the discount of the first $2,500 note was admissible in evidence; and for the same reason the written statement prepared by plaintiff from its books, entitled "Credit Limit—N. A. Staples," and including items of the various notes held by plaintiff against N. A. Staples and defendant, his wife, was also admissible. In short, all transactions relating to the series of dealings between plaintiff and defendant, including notes, discounts, checks, and deposits, are, in our view of the case, proper for consideration by the jury in determining whether $2,000 of the proceeds of the note sued on was procured and used by plaintiff for the satisfaction of her husband's indebtedness to plaintiff in that sum.

(3) This was a question that should have been submitted to the jury.

(4) With respect to the remainder of the note, $500, we find nothing in the evidence which can justify any inference that it was intended or used for the payment of any debt owed to plaintiff by defendant's husband, and to that extent the general affirmative charge for plaintiff was proper.

(5) There was no prejudicial error in the rulings on the pleadings, since, as the case was submitted to the jury, the defendant had the benefit of all meritorious defenses, and this will suffice for another trial.

[Staples v. City Bank & Trust Co.]

The written charge refused to defendant, as shown in the reporter's statement, was in accordance with the law as above declared, and should have been given.

Let the judgment be reversed, and the cause remanded. Reversed and remanded.